IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RENEE MARIE V.,[1]                          3:19-cv-00773-BR

              Plaintiff,                    OPINION AND ORDER

v.

COMMISSIONER OF SOCIAL
SECURITY,

              Defendant.


**KAREN STOLZBERG**
P.O. Box 19699
Portland, OR  97280
(503) 251-7503

          Attorney for Plaintiff

**BILLY J. WILLIAMS**
United States Attorney
**RENATA GOWIE**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

_____

     [1] In the interest of privacy this Court uses only the first
name and the initial of the last name of the nongovernmental
party in this case.  Where applicable, this Court uses the same
designation for the nongovernmental party's immediate family
member.


1 - OPINION AND ORDER

**MICHAEL W. PILE**
Acting Regional Chief Counsel
**ANNE MARIE KING**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2156

       Attorneys for Defendant

**BROWN, Senior Judge.**

     Plaintiff Renee Marie V. seeks judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) in which the Commissioner denied Plaintiff's applications for Disability Insurance Benefits (DIB) under Title II of the Social Security Act and Supplemental Security Income (SSI) under Title XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

     For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

     On August 28, 2015, Plaintiff protectively filed her

2 - OPINION AND ORDER

application for DIB and SSI benefits.  Tr. 119, 419, 424.[2]
Plaintiff alleges a disability onset date of July 1, 2014.
Tr. 119, 419, 424.  Plaintiff's application was denied initially
and on reconsideration.  An Administrative Law Judge (ALJ) held
a hearing on August 1, 2017.  Tr. 119, 239-76.  Plaintiff and a
vocational expert (VE) testified at the hearing.  Plaintiff was
represented by an attorney at the hearing.

On January 12, 2018, the ALJ issued an opinion in which she
found Plaintiff is not disabled and, therefore, is not entitled
to benefits.  Tr. 119-31.  Plaintiff requested review by the
Appeals Council.  On March 24, 2019, the Appeals Council denied
Plaintiff's request to review the ALJ's decision, and the ALJ's
decision became the final decision of the Commissioner.
Tr. 1-4.  *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

On May 16, 2019, Plaintiff filed a Complaint in this Court
seeking review of the Commissioner's decision.


## BACKGROUND

Plaintiff was born on November 22, 1979.  Tr. 130, 419,

---

[2] Citations to the official Transcript of Record (#11)
filed by the Commissioner on October 2, 2019, are referred to as
"Tr."

3 - OPINION AND ORDER

424.  Plaintiff was 34 years old on her alleged disability onset date.  Tr. 130.  Plaintiff has at least a high-school education. Tr. 130.  Plaintiff has past relevant work experience as a material handler.  Tr. 130.

Plaintiff alleges disability due to depression anxiety, Borderline Personality Disorder, hand numbness, Post-Traumatic Stress Disorder (PTSD), and back pain due to degenerative disc disorder.  Tr. 279.

Except as noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 122-30.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The ALJ must develop the record when

there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012). Substantial evidence is "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d. at 1110-11 (quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009)). "It is more than a mere scintilla [of evidence] but less than a preponderance." *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for evaluating a claimant's testimony, resolving conflicts in the medical evidence, and resolving ambiguities. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). Even when the evidence is susceptible to more than

one rational interpretation, the court must uphold the
Commissioner's findings if they are supported by inferences
reasonably drawn from the record. *Ludwig v. Astrue*, 681 F.3d
1047, 1051 (9th Cir. 2012).  The court may not substitute its
judgment for that of the Commissioner. *Widmark v. Barnhart*, 454
F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

At Step One the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity (SGA).  20 C.F.R. §§ 404.1520(a)(4)(i),
416.920(a)(4)(i).  *See also Keyser v. Comm'r of Soc. Sec.*, 648
F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  20 C.F.R.
§§ 404.1509, 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  *See also
Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so

severe as to preclude substantial gainful activity.  20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also Keyser*,
648 F.3d at 724.  The criteria for the listed impairments, known
as Listings, are enumerated in 20 C.F.R. part 404, subpart P,
appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite her limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Taylor v. Comm'r of Soc.
Sec. Admin.*, 659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair
v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work she has done in the past.  20 C.F.R. §§ 404.1520(a)(4)(iv),
416.920(a)(4)(iv).  *See also Keyser*, 648 F.3d at 724.

If the Commissioner reaches Step Five, he must determine

whether the claimant is able to do any other work that exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also Keyser*, 648 F.3d at 724-25.  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform.  *Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines (or the grids) set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff has not engaged in substantial gainful activity since July 1, 2014, Plaintiff's alleged disability onset date.  Tr. 122.

At Step Two the ALJ found Plaintiff has the severe impairments of Borderline Personality Disorder, PTSD, Bipolar II Disorder, panic disorder, and "degenerative disc disease of the cervical spine with disc desiccation and stenosis most prominent at C6-7."  Tr. 122.

At Step Three the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 122.  The ALJ found Plaintiff has the RFC to perform light work with the following limitations:  can frequently finger and handle bilaterally; can do simple, routine tasks without any public contact; can occasionally climb ramps and stairs; can occasionally crouch, crawl, and kneel; can occasionally reach overhead bilaterally; cannot climb ropes, ladders, or scaffolds; and should avoid concentrated exposure to vibration and hazards.  Tr. 124.

At Step Four the ALJ concluded Plaintiff is unable to perform her past relevant work.  Tr. 130.

At Step Five the ALJ found Plaintiff can perform other jobs that exist in the national economy such as marker, small-products assembler, and mail clerk.  Tr. 131.  Accordingly, the ALJ found Plaintiff is not disabled.  Tr. 131.

## DISCUSSION

Plaintiff contends the ALJ erred when she (1) failed to provide legally sufficient reasons for discounting the opinions of Keli Dean, Psy.D., and Scott Alvord, Psy.D., examining

9 - OPINION AND ORDER

psychologists, and Pamela Buck, Ph.D., treating psychologist;
(2) failed to provide clear and convincing reasons for
discounting Plaintiff's subjective symptom testimony; and
(3) failed to provide legally sufficient reasons for discounting
the lay-witness statements of Karen V., Plaintiff's mother,
James Bilon, Plaintiff's boyfriend, and Michelle Hall,
Plaintiff's friend.

**I.    The ALJ properly discounted the opinions of Drs. Dean,
Alvord, and Buck.**

Plaintiff contends the ALJ erred when she failed to provide
legally sufficient reasons for discounting the opinions of
Drs. Dean, Alvord, and Buck regarding Plaintiff's limitations.

**A.    Standards**

"In disability benefits cases . . . physicians may
render medical, clinical opinions, or they may render opinions
on the ultimate issue of disability - the claimant's ability to
perform work." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir.
2014). "In conjunction with the relevant regulations, [courts]
have . . . developed standards that guide [the] analysis of an
ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc.
Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008).

"If a treating or examining doctor's opinion is
contradicted by another doctor's opinion, an ALJ may only reject

it by providing specific and legitimate reasons that are
supported by substantial evidence." *Id.*  When contradicted, a
treating or examining physician's opinion is still owed
deference and will often be "entitled to the greatest
weight . . . even if it does not meet the test for controlling
weight." *Orn v. Astrue,* 495 F.3d 625, 633 (9th Cir. 2007).  An
ALJ can satisfy the "substantial evidence" requirement by
"setting out a detailed and thorough summary of the facts and
conflicting clinical evidence, stating his interpretation
thereof, and making findings." *Reddick,* 157 F.3d at 725.  "The
ALJ must do more than state conclusions.  He must set forth his
own interpretations and explain why they, rather than the
doctors', are correct." *Id.* (citation omitted).

   **B.   Analysis**

       On July 9, 2015, Dr. Dean, examining psychologist,
performed a psychological evaluation of Plaintiff to determine
Plaintiff's ability to participate in the Department of Human
Services (DHS) JOBS program, to assist with employment planning,
and to make a recommendation for treatment and services.
Tr. 841-50.  Dr. Dean diagnosed Plaintiff as having PTSD,
Generalized Anxiety Disorder, Major Depressive Disorder, and
Borderline Personality Disorder.  Tr. 847.  Dr. Dean opined

Plaintiff was "quite limited in her ability to participate in
the DHS JOBS program and employment due to her mental health
symptoms."  Tr. 849.

        The ALJ gave Dr. Dean's opinion "little weight" on the
grounds that Dr. Dean did not provide "specific functional
limitations" for Plaintiff and Dr. Dean's assessment was based
in part on Plaintiff's self-reporting of symptoms that are not
fully consistent with the record.  Tr. 125.  For example, the
ALJ noted Plaintiff reported to Dr. Dean that she struggled with
riding the bus and was hypervigilant in public.  The Plaintiff,
however, stated in a Cooperative Disability Investigations Unit
(CDIU) interview that she didn't have any qualms about going
out, taking public transportation, driving, shopping, or working
with children and adults in a classroom setting.  Tr. 843, 1200.

        On July 14, 2017, Dr. Alvord, examining psychologist,
performed a psychological evaluation of Plaintiff.  Tr. 1529-34.
Dr. Alvord diagnosed Plaintiff as having "a complex set of
symptoms primarily involving Bipolar Disorder, Borderline
Personality Disorder, Panic Disorder\Post Traumatic Stress
Disorder as well as Somatic Symptom Disorder."  Tr. 1533.  On
July 24, 2017, Dr. Alvord completed a Mental Impairment
Questionnaire and indicated on the check-the-box form that

Plaintiff has "marked" limitations in her ability to perform in
the following areas:  to maintain attention for two-hour
segments; to maintain regular attendance and to be punctual; to
sustain an ordinary routine without special supervision; to
complete a normal workday and workweek without interruptions
from psychologically-based symptoms; to perform at a consistent
pace; to accept instructions and to respond appropriately to
criticism from supervisors; and to deal with normal work stress.
Tr. 1544.  Dr. Alvord also opined Plaintiff has "extreme"
functional limitations in her ability to interact with others
and to concentrate, to persist, and to maintain pace.  Tr. 1545.
He also concluded Plaintiff would perform her job at less than
80% on a sustained basis and would miss four or more days of
work per month.  Tr. 1545.

        The ALJ gave Dr. Alvord's opinion "some weight" on the
ground that most of his diagnoses were consistent with the
medical record.  Tr. 126.  The ALJ, however, concluded
Dr. Alvord's assessment of Plaintiff's work-related functional
limitations did not warrant great weight because they are based
on Plaintiff's "varied" descriptions of her self-reported
limitations and symptoms.  Tr. 126.  For example, the ALJ
pointed out that Plaintiff told Dr. Alvord she was unable to use

public transportation, but, as noted, Plaintiff told the CDIU investigator that she used public transportation.  Plaintiff also reported to Dr. Alvord that she stays in bed for "days on end," but a Parenting Time Evaluation in 2016 noted she was a "consistent and helpful presence" at school, volunteered in the classroom, went on field trips, and regularly checked with her children's teacher regarding homework.  Tr. 1531, 777.

On July 20, 2017, Dr. Buck, Plaintiff's treating psychologist, agreed with a letter written by Plaintiff's counsel stating Plaintiff suffered from PTSD, Major Depressive Disorder, Generalized Anxiety Disorder, Borderline Personality Disorder, and Bipolar Disorder.  Tr. 1535.  Dr. Buck also agreed Plaintiff's symptoms "are genuine and severe," Plaintiff's "prognosis is guarded," and "it may be difficult for [Plaintiff] to travel to a workplace and to sustain any sort of work." Tr. 1536.

The ALJ only gave Dr. Buck's opinion "some weight" on the ground that the evidence does not support her opinion that Plaintiff would have difficulty traveling to a workplace and sustaining work.  Tr. 126.  For example, the ALJ again cited the fact that Plaintiff has participated in field trips with her children's school, takes her children to parks, and has traveled

out of state on several occasions.

Based on this record the ALJ gave "great weight" to
the opinions of Dr. Bill Hennings, Ph.D., and Dr. Joshua Boyd,
Psy.D., state-agency consultants, who opined in December 2015
and March 2016 respectively that Plaintiff is capable of
carrying out simple, routine instructions, but Plaintiff is
limited in her ability to complete tasks requiring interaction
with the general public.  Tr. 126, 303-04, 335.

The Court concludes on this record that the ALJ
properly discounted the opinions of Drs. Dean, Alvord, and Buck
and provided legally sufficient reasons supported by substantial
evidence in the record for doing so.

**II.  The ALJ properly discounted Plaintiff's symptom testimony.**

Plaintiff contends the ALJ erred when she failed to provide
clear and convincing reasons for discounting Plaintiff's symptom
testimony.

**A.    Standards**

The ALJ engages in a two-step analysis to determine
whether a claimant's testimony regarding subjective pain or
symptoms is credible.  "First, the ALJ must determine whether
the claimant has presented objective medical evidence of an
underlying impairment 'which could reasonably be expected to

produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014)(quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).  The claimant need not show her "impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison*, 759 F.3d at 1014 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)).  A claimant is not required to produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

If the claimant satisfies the first step of this analysis and there is not any affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15.  *See also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006)("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").  General assertions that the claimant's testimony is not credible are insufficient.  *Parra v. Astrue,* 481 F.3d 742,

750 (9th Cir. 2007).  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

### B.    Analysis

Plaintiff testified she is unable to work due to anxiety, disassociation, and suicidal thoughts as well as experiencing various physical pains.  Tr. 251.  Plaintiff stated there are "times in my life when I'm down and times when I am over-confident; I'm supermom; [b]etter at pacing myself."  Tr. 1506.  In addition, Plaintiff stated she was often afraid to go out alone, was isolated most of the time, and needed to rest during the day.

The ALJ concluded Plaintiff's testimony regarding her mental-health symptoms was inconsistent with the treatment record and not supported by her activities.  Tr. 124.  For example, Plaintiff stated she was unable to use public transportation, but, as noted, Plaintiff told the CDIU investigator that she used public transportation.  Also as noted in a Parenting Time Evaluation, Plaintiff was a "consistent and helpful presence" at school, volunteered in the classroom, went on field trips, and "was in the classroom daily" during the last

part of the school year.  Tr. 776-777, 1531.  Plaintiff has also traveled to Arkansas, Arizona, and San Diego.  Tr. 255-56.

On this record the Court concludes the ALJ did not err when she discounted Plaintiff's symptom testimony and found it was not fully credible because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

## III. The ALJ did not err when she discounted the statements of lay witnesses.

Plaintiff contends the ALJ erred when she discounted the lay-witness statements of Karen V., Plaintiff's mother; James Bilon, Plaintiff's ex-boyfriend; and Michelle Hall, Plaintiff's friend.

### A.   Standards

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  *Lewis v. Apfel,* 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific."  *Stout v. Comm'r, Soc. Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir. 2006).  Germane reasons for discrediting a lay-witness's testimony include inconsistency with the medical evidence and

the fact that the testimony "generally repeat[s]" the properly discredited testimony of a claimant. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). *See also Williams v. Astrue*, 493 F. App'x 866 (9th Cir. 2012).

### B.   Analysis

In a statement dated July 25, 2017, Karen V., Plaintiff's mother, stated Plaintiff has manic episodes weekly, is unable to function, isolates herself, and stays in bed all day.  Tr. 797-98.  She noted Plaintiff is afraid to use public transportation, afraid to go out alone, and is isolated most of the time.  *Id.*

The ALJ discounted these statements on the grounds that they were not consistent with the treatment record and Plaintiff's activities.  For example, the ALJ noted Plaintiff's activities at her children's school and the fact that Plaintiff told the CDIU investigator she did household chores, cooked, worked on projects, and was able to drive even though she usually used public transportation to go to work, to the store, and to appointments.  Tr. 1199.

In a statement dated July 25, 2017, Bilon, Plaintiff's ex-boyfriend, stated Plaintiff "flipped out" every day, became enraged and aggressive, and engaged in self-harm.

Tr. 799-800.  In addition, he stated Plaintiff experienced episodes in which she "became a completely different person," wouldn't know what was happening, and "it was like she blacked out, but was still conscious."  Tr. 799.  The ALJ discounted these statements on the ground that they were inconsistent with Plaintiff's treatment records.  Tr. 129.  For example, the ALJ pointed out that Dana Lambrose, N.P., Plaintiff's treating psychiatric mental-health provider, noted Plaintiff is "obviously struggling emotionally," but she does not dissociate to the extent of black-outs or fugue states.  Tr. 1367.

        In a statement dated July 20, 2017, Michelle Hall, Plaintiff's friend, stated Plaintiff cannot socialize outside of her home, avoids public transportation, and "is off task most of the day."  Tr. 801-02.  The ALJ discounted these statements on the same grounds that she discounted the statements of Plaintiff's mother and ex-boyfriend.  Tr. 129

        On this record the Court concludes the ALJ properly discounted the lay-witness testimony and provided germane reasons for doing so.


                            **CONCLUSION**

        For these reasons, the Court **AFFIRMS** the decision of the

20 - OPINION AND ORDER

Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 16th day of June, 2020.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States Senior District Judge

21 - OPINION AND ORDER